CARLSMITH BALL LLP

DAVID LEDGER
ELYZE MCDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Defendants
Guam Seventh-day Adventist Clinic and
Guam-Micronesia Mission

FILED
DISTRICT COURT OF GUAM

NOV - 7 2005

MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JULIA BORJA EMMANUEL,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>GUAM SEVENTH-DAY ADVENTIST CLINIC, GUAM-MICRONESIA MISSION, MICHAEL MAHONEY, and DOES 1 through 10,<br><br>　　　　　　Defendants. | CIVIL CASE NO. CIV03-00030<br><br>**DEFENDANT'S TRIAL BRIEF;<br>DECLARATION OF SERVICE** |

I.　Factual Contentions

Plaintiff Julia Borja Emmanuel is the current Human Resources Manager and the former Human Resources Director at Defendant Guam Seventh-Day Adventist Clinic. The change from a Director position to Manager resulted in a salary and benefit reduction. The reduction was one of a number of cost cutting measures SDA Clinic implemented when it was faced with a negative cash flow crisis.

Ms. Emmanuel claims that she was denied benefits that were granted to "state-side" hires and male Directors, that her position reclassification from the Human Resources Director to

Human Resources Manager was due to her gender, and race and national origin as a Pacific Islander, and that Defendants Guam Seventh-Day Adventist Clinic and Guam-Micronesia Mission ("SDA") created a hostile work environment,[1] which caused her emotional distress. SDA denies Ms. Emmanuel's factual allegations and intends to prove that the cost savings measures, including reclassifying the Human Resources Director position to Manager, were genuine and legitimate business needs and implemented by carefully though out decisions. SDA intends to present the following evidence at trial.

1. Ms. Emmanuel alleges she is of Chamorro (native Guamanian) descent and that she is female.

2. Defendant Guam Seventh-day Adventist Clinic ("SDA") is a religious non profit healthcare organization owned by Defendant Guam-Micronesia Mission.

3. Between September 1, 1992, and February 27, 2003, SDA employed Ms. Emmanuel as its Human Resources Director under an Employment Agreement. The Employment Agreement did not change the employment from being at-will.

4. The administrative responsibilities of SDA's Human Resources Director are similar to those expected of its Associate Administrator for Clinical Services, Dental Director, Eye Clinic Director, Medical Director, and Wellness Center Director. Persons filling these positions at SDA derive from a number of different races and national origins and from both genders.

---

1 Typically, "hostile work environment" claims relate to sexual harassment experienced in the workplace. *See EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1515-16 (9th Cir. 1989). Ms. Emmanuel does not claim in her Complaint that she was sexually harassed. Her reference to a "hostile work environment" experience relates instead to the environment experienced as a result of the alleged racial and gender discrimination. As the hostile work environment alleged by Ms. Emmanuel does not fall within the traditional sexual harassment framework under which hostile work environment claims are analyzed, SDA therefore does not brief herein the legal standard for the traditional hostile work environment claims. SDA submits that the hostile work environment claim, to the extent one is alleged or exists, should be analyzed in the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), as discussed in this Trial Brief.

5. SDA has difficulty recruiting locally for medical doctor and directorship positions. A primary reason for this, if not the primary reason, is because as a religious non-profit healthcare organization, SDA is unable to pay such professionals anywhere near the salary such professionals ordinarily and routinely command in the market. Consequently, SDA hires off-island "interdivisional employees" ("IDE") through its parent, the General Conference of Seventh Day Adventists. IDEs receive a generous benefit package to help off-set the artificial low base rate compensation and Guam's high cost of living. The benefit package includes, among other items, a housing allowance, car insurance, and a paid annual vacation to visit family members residing in the United States. The purpose of the package is to entice off-island doctors and professionals to relocate to Guam to work for SDA, despite the lower salary and Guam's high cost of living. Without the benefit package, SDA would be unable to meet its obligation to provide quality health care to those in need of it.

6. Ms. Emmanuel did not qualify for an IDE package since she was hired locally and not from off-island.

7. Notwithstanding the lack of actual entitlement, as the Human Resources Director, however, Ms. Emmanuel received benefits similar to an IDE, as provided under her Employment Agreement.

8. Leading up to February 27, 2003, various employees complained about Ms. Emmanuel performance at work, such as that (1) Ms. Emmanuel did not demonstrate respect towards employees, treating them as children rather than adults; (2) Ms. Emmanuel displayed a lack of trust in the abilities of employees to do their job well; (3) Ms. Emmanuel shared confidential information regarding employees with others; and (4) Ms. Emmanuel did not

4812-9491-4048.1.037391-00004            3.
Case 1:03-cv-00030   Document 46   Filed 11/07/2005   Page 3 of 9

process requests in a timely fashion. Then Clinic Administrator, Michael Mahoney, processed these complaints in the proper manner and counseled Ms. Emmanuel.

9. Leading up to July 10, 2003, and thereafter, the SDA Board of Directors was gravely concerned over the Clinic's financial situation. For example, cash flow was at times insufficient to ensure that payroll for the next pay period could be met. The SDA Board concluded that, for the Clinic to survive, it had to cut expenses and increase revenues and collections on accounts receivable. As a result, the Board considered various options for reducing expenses, including reclassifications and pay reductions among various employment positions.

10. Through market research conducted on Guam of other similar medical clinic's, SDA determined that the salary being paid to Ms. Emmanuel as Human Resources Director was almost twice as much as other human resources managers on Guam were being paid.

11. On July 10, 2003, the Board of the Guam Seventh-Day Adventist Clinic voted unanimously to change the classification of the position of "Human Resources Director," an administrative position, to "Human Resources Manager," a non-administrative position. The change in position resulted in a change from a salaried position to an hourly position. The reclassification resulted in a pay reduction and the removal of certain IDE benefits received in addition to Emmanuel's prior salary. Other benefits, such as personal and family health care coverage, remained in place.

12. In addition to Ms. Emmanuel's position reclassification, SDA reclassified other employees from salary to hourly in order to reduce its expenses, and did not fill vacant positions.

13. The classification change was the result of both concerns over the SDA's dire financial condition, and the appropriate level of compensation for the services provided by Ms. Emmanuel. More specifically, the Board determined that the work produced by Ms. Emmanuel was more in line of a managerial position, rather than a professional level directorship position. This conclusion was likewise supported by the results of the market survey of other medical clinics on Guam.

14. SDA did not base Ms. Emmanuel's reclassification on her gender, or on her race or national origin.

15. Ms. Emmanuel remains employed at SDA and receives the Manager-level salary and benefits, and is currently on administrative leave. Another female currently performs Ms. Emmanuel's work duties.

II. Legal Issues

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), a plaintiff claiming to be a victim of discrimination based on race or gender must demonstrate in a prima facie case (1) that she belongs to a racial minority or a protected group; (2) that she was qualified for her position; (3) that she was subject to adverse employment action; and (4) that she was treated differently from others similarly situated. *See Chuang v. Univ. of Cal. Davis Board of Trustees*, 225 F.3d 1115, 1123-24 (9th Cir. 2000); *Kortan v. California Youth Authority*, 217 F.2d 1104, 1113 (9th Cir. 2000); *UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 200 (1991) (to prevail on a Title VII disparate treatment sex discrimination claim, an employee must establish that, but for his or her sex, he or she would have been treated differently).

Only if Ms. Emmanuel proves all elements of his prima facie case does the burden shift to SDA to produce evidence that the adverse employment action was based on legitimate, non-

discriminatory reasons. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). If SDA provides such proof at trial, the burden shifts back to Ms. Emmanuel to show SDA's reason was a pretext for discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proferred explanation is unworthy of credence." *Id.* at 256.

Importantly, in demonstrating her prima facie case, Ms. Emmanuel must prove that SDA **intended** to unlawfully discriminate against her because of her gender and/or race. Merely demonstrating that a difference in wages exists is insufficient to support a claim of discrimination in violation of Title VII. *Lewis v. Smith*, 225 F. Supp. 2d 1054 (D. Ariz. 2003). Ms. Emmanuel must show some evidence of *intentional* discrimination in addition to evidence of a wage disparity for *similar* work. *Id.* at 1060-61.

Ms. Emmanuel will not be able to make a prima facie case under these standards. First, Ms. Emmanuel cannot demonstrate that she was qualified for her position, because she did not perform the responsibilities expected of her in competent and a timely manner. *See Pettiford v. North Carolina Dep't of Health and Human Servs.*, 228 F. Supp. 2d 677 (M.D.N.C.) (employee not performing at employer's legitimate job expectations fails to establish her prima facie case). Moreover, other employees complained about Ms. Emmanuel's poor attitude and work ethic which negatively impacted her ability to perform her job adequately.

Second, she cannot demonstrate that she was treated differently from others similarly situated. When a Title VII plaintiff seeks to establish her prima facie case based solely on a comparison of the work she performs with other's work, she will have to show that her job requirements are substantially equal, not comparable, to that of a similarly situated male. *Gunther v. County of Wash.*, 623 F.2d 1303 (9th Cir. 1980). The evidence at trial will

demonstrate that SDA reclassified Ms. Emmanuel's position from Director to Manager because her job responsibilities did not place her on an equal footing with the responsibilities expected of similarly situated Directors who, without exception, were Doctors and other health care professionals. The other Directors, who came from both genders as well as various racial backgrounds, were mostly medical doctors, who took on the additional department directorship responsibilities for no additional compensation notwithstanding they were already severely underpaid for their positions. The majority of Directors also came from off-island and received IDE packages, which were necessary in order to retain them on Guam. Ms. Emmanuel, on the other hand, was not an IDE and was not entitled to benefits offered to IDEs recruited and employed from off-island. Lastly and most importantly, there is absolutely no proof that racial or gender animus motivated SDA's decision to reclassify Ms. Emmanuel.

Moreover, should the Court determine that Ms. Emmanuel has barely satisfied her prima facie case, there are legitimate, non-discriminatory reasons for the change in her position title. SDA will demonstrate at trial that it was undergoing severe financial difficulties, almost to the point of missing payrolls, and pay reductions were a necessary component of reducing expenses. Because SDA was also concerned that Ms. Emmanuel's salary as the Human Resources Director surpassed the value the market placed on her position, based on what similarly situated human resources managers and directors received in Guam, SDA reduced Ms. Emmanuel's salary. Finally, SDA believed that it was not receiving the quality and level of services provided by Ms. Emmanuel personally for a person in her position. On the other hand, SDA did not consider race and gender as bases for her salary reduction and position reclassification.

In addition, SDA's legitimate and nondiscriminatory motive for reclassifying Ms. Emmanuel's position, as opposed to a discriminatory motive based on Ms. Emmanuel's race and

gender, is supported by the fact that another female currently performs Ms. Emmanuel's work responsibilities while Ms. Emmanuel is on administrative leave. *See Hannon v. Chater*, 887 F. Supp. 1303 (9th Cir. 1995) (evidence that another person of the same gender as plaintiff performs plaintiff's duties is helpful to defendant's rebuttal in supporting a nondiscriminatory justification for its employment action).

Finally, Ms. Emmanuel cannot demonstrate that these legitimate, non-discriminatory reasons were pretextual. She does not have any direct evidence of discriminatory motive, nor does she have any facts demonstrating that SDA's rationale for reclassifying her position is unworthy of credence.

III. Evidentiary Problems

SDA does not anticipate any evidentiary problems at this time.

DATED: Hagåtña, Guam, November 7th, 2005.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE MCDONALD
Attorneys for Defendants
Guam Seventh-day Adventist Clinic and
Guam-Micronesia Mission

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on November 7th, 2005, I will cause to be served, via hand delivery, a true and correct copy of DEFENDANTS' TRIAL BRIEF upon Plaintiff's Counsel of record as follows:

> Peter J. Sablan, Esq.
> Lujan, Aguigui & Perez, LLP
> Suite 301, Pacific News Building
> 238 Archbishop Flores Street
> Hagåtña, Guam 96910

Executed this 7th day of November 2005 at Hagåtña, Guam.

_____
DAVID LEDGER