CARLSMITH BALL LLP

DAVID LEDGER
ELYZE MCDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Defendants
Guam Seventh-day Adventist Clinic,
Guam-Micronesia Mission



FILED
DISTRICT COURT OF GUAM
NOV 29 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JULIA BORJA EMMANUEL,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>GUAM SEVENTH-DAY ADVENTIST CLINIC, GUAM-MICRONESIA MISSION, MICHAEL MAHONEY, and DOES 1 through 10,<br><br>　　　　Defendants. | CIVIL CASE NO. CIV03-00030<br><br>**DEFENDANTS' MOTION IN LIMINE TO EXCLUDE IRRELEVANT EVIDENCE (FED. R. EVID. 401 & 403); DECLARATION OF ELYZE MCDONALD; EXHIBITS A & B; DECLARATION OF SERVICE** |

## I. INTRODUCTION

Plaintiff Julie Emmanuel intends to introduce collateral, anecdotal and irrelevant evidence to support her discrimination claims. Defendants Guam Seventh-day Adventist Clinic and Guam-Micronesia Mission seek an Order excluding irrelevant evidence falling within two categories: (1) anecdotal evidence relating to other non-similarly situated employees' change in employment status, and (2) evidence relating to a loss of janitorial services provided by Plaintiff's spouse. This evidence is both irrelevant to this case and constitutes a waste of the Court's time. The evidence should be excluded.

## II. STANDARDS FOR ANALYZING RELEVANT EVIDENCE

Relevant evidence means that "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

## III. IRRELEVANT PATTERN OR PRACTICE EVIDENCE

### A. Legal Standards for Admitting Pattern or Practice, or Anecdotal, Evidence.

Plaintiff apparently intends to introduce evidence in an attempt to show that Defendants have engaged in a "pattern or practice" of discriminatory conduct, as evident by exhibits relating to the employment of Frances Mantanona and the listing of Rogelio Natividad as a witness. *See* Pl.'s Exs. 21-23, 25-29, 31-33; Pl.'s Witness List (listing Mr. Natividad). Evidence relating to the employment of Ms. Mantanona (the current SDA Administrator) and Mr. Natividad do not have any direct or indirect relevance to Plaintiff's claim, as they do not deal with Plaintiff's employment, and on their own do not make Plaintiff's alleged discrimination more or less probable. However, Plaintiff intends to utilize the alteration in Ms. Mantanona's and Mr. Natividad's employment status at SDA in an attempt to show that SDA engages in a "pattern or practice" of discrimination. As the Supreme Court has explained, pattern-or-practice claims cannot be based on "sporadic discriminatory acts" but rather must be based on discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace. *See Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 336 (1977).

In utilizing the "pattern of practice" method of proving discrimination, Plaintiff must establish, by a preponderance of the evidence, that racial and/or gender discrimination is

Defendants' **standard operating procedure** - the regular rather than the unusual practice." *Id.*; *Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005) (emphasis added). "Standard operating procedure" is executed by the company as a whole, rather than by individual managers. *EEOC v. McDonnell Douglas Corp.*, 191 F.3d 948, 952 (8th Cir. 1999).

Moreover, "[a]necdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff." *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000). Anecdotal evidence of discrimination regarding persons with different supervisors than the plaintiff, who worked in different parts of the company, and whose adverse employment action was removed in time from the plaintiff's termination cannot be probative of whether age was a determinative factor in the plaintiff's adverse employment action. *Id.*

In addition, in analyzing whether to permit anecdotal evidence, the Court should be weary of engaging mini-trials. In *Sims v. Mulcahy*, 902 F.2d 524, 531 (7th Cir. 1990) and *Wyvill*, 212 F.3d at 303, the courts warned against mini-trials which have slight or no probative value on whether the plaintiff suffered discrimination, and unduly consume the court's time.

B. <u>Frances Mantanona</u>

In 1999, Frances Mantanona was SDA's Associate Administrator. She received a reduction in pay due to a failure to meet the expectations of her supervisor, Don Weidemann. Ms. Mantanona herself does not claim that she was the victim of racial and/or gender discrimination. At her deposition, Ms. Mantanona testified strongly and without hesitation that she believed that a reduction in her salary was not due to the fact that she was a woman, nor to the fact that she was Chamorro. Ex. A at 29:22 - 30:6. Indeed, Ms. Mantonona explained that her differences with her boss over her performance focused primarily on that fact that she was taking graduate studies at college at the same time she was working full time. Her boss felt that

the graduate studies were taking up too much time and should give way to more time spent on employment matters. Ms. Mantanona disagreed. Neither do any of the exhibits proffered by Plaintiff give any indication that race was a motivating factor in Ms. Mantanona's employment.

Moreover, Ms. Mantanona was not similarly situated with Plaintiff. Each had different supervisors; Mr. Weidemann proposed Ms. Mantanona's change in employment status, while the Ad Hoc Committee, consisting of Mike Mahoney and Bevan Geslani, proposed the change in Plaintiff's employment status. There is also a four-year gap between the change in Ms. Mantanona's employment status (1999) and Plaintiff's (2003). These are completely different and isolated incidents which have no relationship and effect on each other. The Court should not entertain meaningless evidence concerning Ms. Mantanona's situation at SDA.

In order to prove that race was the motivating factor in Ms. Mantanona's change in employment status, Plaintiff will at a minimum have to call Don Weidemann to testify because as already noted, Ms. Mantanona does not attribute the alteration in her employment status to any discriminatory motive. However, Plaintiff has not listed Mr. Weidemann as a witness, and has never disclosed him in discovery as a person having knowledge of the events of this case.

Plaintiff's case that Ms. Mantanona suffered racial and/or gender discrimination is unsupported by the record. In fact, it is unsupported by anything. Moreover, it is too remote in time and circumstance to prove that discrimination at SDA is widespread, routine or regular. Such evidence should be precluded at trial.

C. Rogelio Natividad

Plaintiff also intends to support a so-called pattern or practice claim through evidence relating to Rogelio Natividad, whose position was altered by Defendant SDA from a management to a supervisory position. Mr. Natividad is a male Filipino, Ex. B at 6:13-14, and therefore not within the same gender or race categories as Plaintiff, a Chamorro female.

Natividad was not similarly situated with Plaintiff; he was in a completely different department, in particular, maintenance. His employment status was in no way connected with Plaintiff's employment status. *See Wyvill*, 212 F.2d at 303 (no pattern or practice established by anecdotal witnesses with different jobs than the plaintiff, executed different duties, and had different supervisors). Also, Mr. Natividad's change in employment status occurred in 1998, *five years prior to the change* in Plaintiff's employment status. *See* Def.'s Trial Ex. K.

After his position was changed, Mr. Natividad did not make any claim of gender or race discrimination, and was not given any indication that the change in his position was due to gender or race. Ex. B at 21:19-21. At his deposition, Mr. Natividad denied any perceived discrimination and instead indicated continued satisfaction with his employment. Indeed, he expressed gratitude for all the SDA clinic had done for him and his family over the years, such as subsidizing his children's' education. Again, the Court will have to engage in a mini-trial to determine whether Mr. Natividad was the "victim" of discrimination by calling witnesses other than Mr. Natividad to establish that discriminatory motive. That effort will be futile in light of the complete lack of evidence of discrimination.

D. <u>Conclusion on Anecdotal Evidence</u>

Plaintiff will greatly waste the Court's time in her efforts to prove a so-called pattern or practice of discrimination with evidence by persons who do not claim to be victims of racial or gender discrimination and who in fact are not victims of racial or gender discrimination. In short, Plaintiff has tried but failed to enlist unwilling allies. Plaintiff fails to provide any evidence to prove that these individuals were discriminated against, and therefore fails to support any pattern or practice of discrimination.

Plaintiff's lack of evidence will take its toll on the Court during the trial. In order to entertain these collateral discrimination claims, the Court will be engaging two other mini-trials.

Given that these individuals do not claim to be the victims of discrimination, and that there is no evidence to establish such discrimination, the Court will only be wasting its time in entertaining Plaintiff's unsupported pattern or practice theory.

Federal Rule of Evidence 403 compels the Court to exclude evidence due to undue delay and waste of time. Evidence relating to Ms. Mantanona's employment at Defendant SDA and Mr. Natividad's position change are irrelevant and outweighed by interests of time. The Court should preclude Plaintiff from advancing this unsupported theory by excluding evidence relating to Ms. Mantanona's and Mr. Natividad's employment.

## IV. IRRELEVANT EVIDENCE PERTAINING TO PLAINTIFF'S SPOUSE

Plaintiff intends to introduce evidence pertaining to Defendants' outsourcing of contract janitorial services, which were previously provided by Plaintiff's spouse. In her Trial Brief, Plaintiff states that her spouse lost the janitorial contract and that he is feeling the pain and suffering of the "intentional discrimination". Plaintiff also includes a number of exhibits pertaining to competing bids submitted to provide janitorial services. *See* Pl.'s Exs. 49, 51-55.

Defendant is unable to determine how this evidence is at all relevant to Plaintiff's discrimination claims. The answer is that it is not. Rather, it is reaching for straws to bolster a strikingly weak case of alleged discrimination. *Mr.* Emmanuel is not a plaintiff in this action, and thus his "pain and suffering" for having lost the bid competition for the janitorial services at SDA is not at issue. Nor has Mr. Emmanuel brought any discrimination claims against Defendants.

In the event the Court considers Mr. Emmanuel's loss of the janitorial services contract to be anecdotal evidence of a pattern or practice of discrimination, Mr. Emmanuel cannot demonstrate that he is similarly situated with Plaintiff. He is an outside contractor, *and therefore is not employed by Defendants.* He is also a male, and therefore not of the same gender.

Evidence pertaining to Mr. Emmanuel's janitorial services therefore is irrelevant to this litigation and should be precluded.

V. **CONCLUSION**

Pursuant to Federal Rules of Evidence 401 and 403, the Court should exclude evidence that is irrelevant to Plaintiff's claims and unduly time-consuming. This includes "pattern or practice" evidence relating to the alteration in the employment statuses of Ms. Mantanona and Mr. Natividad. Such irrelevant evidence also includes that relating to the loss of janitorial services and the emotional distress suffered by Plaintiff's spouse.

DATED: Hagåtña, Guam, November 29, 2005.

CARLSMITH BALL LLP

_____
DAVID LEDGER
ELYZE MCDONALD
Attorneys for Defendants
Guam Seventh-Day Adventist Clinic,
Guam-Micronesia Mission, and
Michael Mahoney

## DECLARATION OF ELYZE MCDONALD

1. I, ELYZE MCDONALD, hereby declare:

2. I have personal knowledge of the matters stated herein and would be competent to testify to them if called to do so.

3. I am an attorney with the law firm of Carlsmith Ball LLP and represent Defendant Guam Seventh-Day Adventist Clinic and Guam-Micronesia Mission in this case.

4. Attached hereto as Exhibit A is a true and correct copy of an excerpt of the deposition transcript of Frances Mantanona, taken on February 9, 2005.

5. Attached hereto as Exhibit B is a true and correct copy of an excerpt of the deposition transcript of Rogelio Natividad, taken on February 9, 2005.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of November, 2005

_____
ELYZE MCDONALD

1   A   Correct.
2   Q   And all of that was threatened to be
3 removed?
4   A   Correct.
5   Q   Or did they remove it?
6   A   It was removed.
7   Q   So after a year, it was removed? Or,
8 after the six months he gave you?
9   A   It was within the year.
10  Q   Within the year?
11  A   Correct, after six months.
12  Q   Do you know if anybody else had that
13 same problem?
14  A   No, I don't.
15  Q   Do you know anything about Roger
16 Natividad?
17  A   I hear rumors, but no, I didn't know
18 anything.
19  Q   You didn't know anything about his
20 situation?
21  A   No.
22  Q   Did they tell you that it was done
23 because of your performance, your failure to do
24 what was tasked?
25  A   That's correct.

DEPO RESOURCES
George B. Castro
Court Reporter
Tel.(671)688-DEPO * Fax(671)472-3094

Case 1:03-cv-00030   Document 67   Filed 11/29/2005   Page 9 of 13   EXHIBIT A

```
1    Q    Your failure to quit school?
2    A    Meet his expectations, yes.
3    Q    Not because you're a woman?
4    A    No.
5    Q    Not because you're a Chamorro?
6    A    No.
7    Q    Did you ever hear anybody talk about
8  that, that that was why it was being done to
9  you?
10   A    You hear rumblings, but not directly.
11   Q    So you never got any real statements
12 like, I heard this person say they wanted to
13 get rid of your position?
14   A    You know, interestingly, I did hear
15 something or someone did speak to me directly,
16 but this was after I had left the organization.
17   Q    Who did you speak to?
18   A    I didn't speak to him, he actually
19 approached me. And unfortunately he was the
20 gunman that had come into the clinic.
21   Q    The gunman?
22   A    Yes, after I had left the organization.
23   Q    What did he say to you?
24   A    He just -- from his perspective, he
25 felt that -- that was from his perspective that
```

1 to testify today?
2    A   No.
3    Q   If you don't understand a question that
4 I present to you, you can just ask me to repeat
5 it and I'll repeat it. If you want me to
6 clarify it, I can do that as well. But we want
7 you to answer from what you know. Okay?
8    A   Okay.
9    Q   Can you tell us your age?
10    A   My age?
11    Q   Yes, how old are you?
12    A   64.
13    Q   64. Where were you born?
14    A   From Philippines.
15    Q   You were born in the Philippines. Were
16 you raised in the Philippines?
17    A   No.
18    Q   Where were you raised at?
19    A   Manila.
20    Q   It's part of the Philippines though,
21 right?
22    A   Yeah.
23    Q   What year were you born?
24    A   1940.
25    Q   1940.

```
 1    Q    Did you understand how that change was
 2 made?
 3    A    Just somebody ask me that they are --
 4 ask me you are director now in the maintenance.
 5    Q    Did they tell you that when they
 6 removed from your position as a Maintenance
 7 Director to Maintenance Supervisor, that you
 8 did something wrong?
 9    A    No.
10    Q    Did you do anything wrong that would
11 make them change you?
12    A    No.
13    Q    Did they say that the clinic doesn't
14 have any money to pay you?
15    A    No, they not tell me.
16    Q    They didn't tell you anything like
17 that?
18    A    Nothing.
19    Q    Did they tell you they're changing your
20 position because you're Filipino?
21    A    Oh, no.
22    Q    No?
23    A    No.
24    Q    Did you ever get a high school diploma?
25    A    No.
```

## DECLARATION OF SERVICE

I, Elyze McDonald, hereby declare under penalty of perjury of the laws of the United States, that on November 29, 2005, I will cause to be served, via hand delivery, a true and correct copy of DEFENDANTS' MOTION IN LIMINE TO EXCLUDE IRRELEVANT EVIDENCE (FED. R. EVID. 401 & 403); DECLARATION OF ELYZE MCDONALD; EXHIBITS A & B upon Plaintiff's Counsel of record as follows:

> Peter J. Sablan, Esq.
> Lujan, Aguigui & Perez, LLP
> Suite 301, Pacific News Building
> 238 Archbishop Flores Street
> Hagåtña, Guam 96910

Executed this 29th day of November 2005 at Hagåtña, Guam.

_____
ELYZE MCDONALD