ORIGINAL

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE MCDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Defendants
Guam Seventh-day Adventist Clinic,
Guam-Micronesia Mission



FILED
DISTRICT COURT OF GUAM
DEC 1 3 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JULIA BORJA EMMANUEL,<br><br>           Plaintiff,<br><br>vs.<br><br>GUAM SEVENTH-DAY ADVENTIST CLINIC, GUAM-MICRONESIA MISSION, MICHAEL MAHONEY, and DOES 1 through 10,<br><br>           Defendants. | CIVIL CASE NO. CIV03-00030<br><br>**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW; DECLARATION OF SERVICE** |

I. **INTRODUCTION**

Plaintiff Julia B. Emmanuel has closed her case-in-chief, but has not carried her burden of persuading the Court that Defendants Guam Seventh-day Adventist Clinic and Guam Micronesia Mission have discriminated against her because of her race and gender. Plaintiff's failure to carry her burden warrant judgment as a matter of law in favor of Defendants pursuant to Federal Rule of Civil Procedure 52.

II. **FEDERAL RULE OF CIVIL PROCEDURE 52**

Rule 52 allows judgment as a matter of law in non-jury trials when a party has been fully

heard, the Court finds against the party on her claims, and the party's claims cannot be maintained without a favorable finding on those claims. *See* Fed. R. Civ. P. 52. Judgments issued under Rule 52 are also known as Judgments on Partial Findings.

### III. LEGAL STANDARD FOR JUDGMENT ON PARTIAL FINDINGS IN TITLE VII CASES

A. The *McDonell Douglas* Burden Shifting Analysis

This is a Title VII disparate treatment case, as Plaintiff concedes in her Trial Brief and as outlined in the Pretrial Order submitted by the parties and signed by the Court. Title VII disparate treatment cases are litigated under a burden-shifting analysis. First, the Plaintiff must put on a prima facie case demonstrating (1) that she belongs to a racial minority or a protected group; (2) that she was qualified for her position; (3) that she was subject to adverse employment action; and (4) that she was treated differently from others similarly situated. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 200 (1991) (to prevail on a Title VII disparate treatment sex discrimination claim, an employee must establish that, but for his or her sex, he or she would have been treated differently).

If a plaintiff satisfies the four-prong *McDonnell Douglas* test, unlawful discrimination is presumed. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004). The burden of production then shifts to the employer to provide a legitimate, non-discriminatory reason for the employment action. *Id.* Finally, if the employer produces evidence of a legitimate, non-discriminatory reason for the employment action, the burden shifts back to the plaintiff to prove that the reasons given are pretextual.

B. Application of the *McDonnell Douglas* factors in practice.

In a Title VII disparate treatment case, the plaintiff always retains the overall burden to

4810-6849-9456.2                                2.
Case 1:03-cv-00030   Document 103   Filed 12/13/2005   Page 2 of 10

persuade the trier of fact that the defendants intentionally discriminated against her by a preponderance of the evidence. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 256 (1981).

As stated, once Plaintiff *introduces* evidence of a prima facie case, Defendant is mandated to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510 n.3 (1993). Once Defendant has carried its burden of production, "the *McDonnell Douglas* framework--with its presumptions and burdens--is no longer relevant."[1] *St. Mary's*, 509 U.S. at 510. The role of the presumption is simply to force the defendant to come forward with some response to the Plaintiff's allegations. *Id.* at 510-11.

> **The defendant's "production" (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether Plaintiff has proven "that the defendant intentionally discriminated against [him] because of his race."**

*Id.* (emphasis added). Therefore, when the defendant has already produced evidence of a legitimate business reason throughout Plaintiff's case-in-chief, regardless of whether or not Plaintiff has proved her prima facie case, the District Court has before it all the evidence it needs to decide whether the defendant intentionally discriminated against the Plaintiff. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983); *see also Johnson v. United States Postal Serv.*, 756 F.2d 1461, 1464 (1985) (dismissal proper under the predecessor to Rule 52(c) if the court is convinced that the evidence preponderates against plaintiff even though plaintiff has satisfied a prima facie case). The Eighth Circuit states:

> **If a plaintiff truly fails to produce evidence of a prima facie case or pretext in a bench trial, the case cannot be submitted**

---

[1] Defendants do not concede that Plaintiff has fulfilled a prima facie case, but contends that the burden to prove the prima facie elements has dropped from this case.

> for decision in the first place. Instead, the district court must enter judgment on partial findings for the defendant under Fed. R. Civ. P. 52(c).

*Bowen v. Celotex Corp.*, 292 F.3d 565, 566 (8th Cir. 2002) (emphasis added).

Accordingly, because Defendants have introduced evidence of a legitimate, nondiscriminatory reason throughout Plaintiff's case-in-chief, Plaintiff had the burden of persuading the Court during her case-in-chief that Defendants' decision was actually based on discriminatory motives. By failing to carry that burden, Plaintiff cannot prevail in this case, the case should not be submitted for decision, and judgment as a matter of law is appropriate in favor of Defendants.

## IV. LEGAL DISCUSSION

### A. Defendants Have Satisfied Their Burden of Production by Producing Evidence that Plaintiff's Reclassification Was Due to a Financial Crisis at the Clinic.

Evidence at trial revealed the following, which remains unrebutted by Plaintiff:

1. As a clinic organized under the Seventh-day Adventist religion, the Clinic requires that its healthcare providers belong to the Seventh-day Adventist faith.

2. The Clinic has difficulty recruiting healthcare providers of the Seventh-day Adventist faith from the local community. The Clinic therefore recruits physicians from other Divisions, particularly the North American division, because healthcare providers in Guam must be licensed in the United States. Physicians and other professionals that come from other Divisions to work at the Clinic qualify as Interdivision Employees ("IDEs").

3. Healthcare providers working at the Clinic, whether IDEs or not, make anywhere from one-third to one-half of their market salary in the United States. For example, the evidence at trial revealed that one doctor, Brian Bates, earned a salary of $57,000 at the Clinic but has been offered to work in the United States for $350,000. In order to recruit healthcare

professionals from other Divisions who would be making twice as much and more in the United States, the Clinic offers an IDE benefits package that includes a housing allowance, a tax subsidy, vacation time with the cost of travel, and tuition benefits.

4. The Clinic finds it necessary to offer these packages in order to allow the assist the healthcare professionals to work in Guam, while they are displaced from their families in the United States.

5. In the spring of 2003, the Clinic Board began reviewing ways to cut costs at the Clinic due to a financial crisis. That crisis began in the years before 2003. In mid-2002, for example, the Clinic had a net operating loss of over $800,000. The losses were partially due to the bankruptcy of a local insurance company, GMHP, to which a large number of patients seeking treatment at the Clinic belonged. The Clinic continued treating patients in spite of the lack of insurance coverage by GMHP.

6. That negative trend continued through 2003. By mid-2003, the Clinic was still operating at a loss of over $251,000. Mr. Mahoney testified that the Clinic's financial condition made it difficult to upgrade equipment and recruit healthcare providers.

7. Mr. Mahoney and the Chief Financial Officer reported the dire financial condition of the Clinic to the Board. The Board ordered an Ad Hoc Committee to study different measures of cutting costs, as well as to conduct research to determine the market value of Plaintiff's position.

8. Violet Cruz was a member of the Clinic Board. She testified that during Board meetings in the summer of 2003, the Board was informed that Plaintiff was earning more than one of the doctors at the Clinic.

9. On May 28, 2003, the Ad Hoc Committee devised a number of immediate

measures to cut costs at the Clinic. Those immediate measures included having the salary and benefits of the Human Resources Director position be comparable to the market wage; eliminating the nursing manager position and replacing it with a supervisory position; eliminating the customer service position; instituting a hiring freeze; re-negotiating janitorial contract services; eliminating overtime and temporary work; eliminating paid paternity leave; and implementing a 72-hour work week.

10. The Ad Hoc Committee also recommended a number of intermediate/mid-range plans to cut costs, and long-term strategic plans.

11. The Ad Hoc Committee then sent the report to the Ad Council for review and response. Plaintiff was a member of the Ad Council. The Ad Council adopted a number of the Ad Hoc Committee's immediate recommendations, including modifying the nursing manager's position to require the nursing manager to have part-time duties as a nurse, implementing the hiring freeze, reassigning the duties of the customer service position, eliminating overtime and temporary work, cross-training employees to become versatile, and eliminating the paid paternity leave. The Ad Council deferred the decision on reclassifying the Human Resources position. Plaintiff never reported to Clinic management that reclassifying the Human Resources position would be discriminatory.

12. The Ad Hoc Committee's report was then forwarded to the Board for review.

13. On July 10, 2003, after reviewing the Chief Financial Officer's financial report detailing a financial crisis at the Clinic, the Board unanimously voted to reclassify the Human Resources Director position and reset the position's salary based on a figure set by the Administrator and Medical Director after concluding its study of the market wage.

14. Months prior to the vote, the Chairman of the Board, Remenster Jano, a Ponapean

and Pacific Islander, expressed concerns of having local leadership at the Clinic. However, Chairman Jano, as well as Mrs. Cruz who is married to a Chamorro, participated in the unanimous vote to reclassify the Human Resources Director position in order to cut costs. Also participating in the unanimous vote was Kerstan Reese, who, Plaintiff testified, expressed concerns about the reclassification being perceived as discriminatory and who accompanied Plaintiff on behalf of the Clinic to seek legal advice on the legal effects of the reclassification.

15. Other recommendations adopted by the Board at the July 10, 2003 meeting included studying the janitorial services contract, reclassifying the Administrative Secretary to an hourly position, and not filling the position of the Chief Financial Officer who resigned.

16. The Board did not consider cutting the wages of its healthcare providers because of the disparity between what the providers received at the Clinic and what they could earn in the United States. The Board was also concerned that it would have difficulty in recruiting healthcare providers if it made further cuts to their salary and benefit packages.

17. Violet Cruz further testified that if it were not for the financial crisis, the Board would not have had to reclassify Plaintiff's position or the Administrative Secretary position.

B. <u>Plaintiff Has Not Proven by a Preponderance of the Evidence that Defendants Discriminated Against Plaintiff Because of her Race and Gender.</u>

Plaintiff retains at all times the burden to persuade the Court that Defendants discriminated against her because of her race and gender. *Burdine*, 450 U.S. at 253, 256. Plaintiff simply fails to provide any evidence supporting a discriminatory motive on Defendants' behalf.

Plaintiff must offer specific and substantial evidence challenging the credibility of the employer's motives. *Vasquez*, 349 F.3d at 642. Plaintiff has not offered any specific or substantial evidence discrediting Defendants' legitimate, nondiscriminatory business reasons and,

in general, has not shown by a preponderance of the evidence that SDA's motives were discriminatory. To the contrary, all evidence weighs against Plaintiff's claims of discrimination.

For example, Plaintiff's employer is an organization whose mission is to spread the word of God. It has an inclusive mission as opposed to an exclusive one.

The President of the Guam Micronesia Mission is a Ponapean - a Pacific Islander - who encourages local leadership. In the Spring of 2003, when the possibility of the reclassification was raised, he stated that the Clinic needs local leadership. When faced with the Clinic's financial picture, however, he participated in the unanimous vote to reclassify Plaintiff. As already mentioned, also participating in that unanimous vote was Violet Cruz, a Caucasian woman who is married to a Chamorro, and Kerstan Reese, who expressed concerns that the cuts would appear to be discriminatory. The Clinic Board members had no motive to discriminate against Plaintiff, but were obliged to fulfill their duties as Board members to allow the Clinic to continue to operate.

Plaintiff was the Human Resources Director for eleven years, and part of those years during the time of Don Weidemann, who Plaintiff alleges discriminated against Roger Natividad and Frances Mantanona. Plaintiff herself testified that during those eleven years, Plaintiff received praise for her performance, and was nominated to fill various positions in the SDA church community. At the clinic, she regularly received salary increments and also received votes of confidence in the tasks she was given to perform.

The Clinic was a generous employer during good financial times, and paid for the college educations of the children of Julie Emmanuel and Roger Natividad, in addition to housing allowances and auto insurance and other benefits. However, when a financial crisis presented itself, the Clinic needed to make cost adjustments and did so without considering race or gender.

Plaintiff has not shown that the Clinic's financial crisis is not worthy of credence. The financial reports for 2002 and 2003 show an alarming negative trend, a fact that has not been rebutted by Plaintiff. Nor has Plaintiff shown that discriminatory motives lie at the heart of her reclassification. There is absolutely no evidence that the Clinic looked at Plaintiff's race or gender and based its decision on those factors. The evidence instead demonstrates that the Clinic looked at the financial report, and then at the Ad Hoc Committee's recommendations and made several cost cutting decisions. Plaintiff is the victim of a bad economy but not of discrimination. She has not proven that the Clinic was motivated by impermissible factors of race and gender and therefore, as she has been fully heard on this issue, judgment as a matter of law on partial findings is appropriate.

## V. CONCLUSION

Plaintiff has failed to carry her burden of persuading the Court that discriminatory motives lie at the heart of Defendants' decision to reclassify her from the Human Resources Director to Human Resources Manager, and to reduce her benefits. For this reason and the reasons discussed in this Motion, Defendants respectfully move for judgment as a matter of law.

DATED: Hagåtña, Guam, December 13, 2005.

CARLSMITH BALL LLP

_____
DAVID LEDGER
ELYZE MCDONALD
Attorneys for Defendants
Guam Seventh-Day Adventist Clinic,
Guam-Micronesia Mission, and
Michael Mahoney

# DECLARATION OF SERVICE

I, Elyze McDonald, hereby declare under penalty of perjury of the laws of the United States, that on December 13, 2005, I will cause to be served, via hand delivery, a true and correct copy of DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW upon Plaintiff's Counsel of record as follows:

> Peter J. Sablan, Esq.
> Lujan, Aguigui & Perez, LLP
> Suite 301, Pacific News Building
> 238 Archbishop Flores Street
> Hagåtña, Guam 96910

Executed this 13th day of December 2005 at Hagåtña, Guam.

*[signature]*
ELYZE MCDONALD