**LUJAN, AGUIGUI & PEREZ LLP**
Attorneys at Law
Pacific News Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064/5
Facsimile (671) 477-5297

*Attorneys for Plaintiff Julia Borja Emmanuel*

**FILED**

DISTRICT COURT OF GUAM

JAN 20 2006 *P*

MARY L.M. **MORAN**
CLERK OF **COURT**

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF GUAM

| | |
|---|---|
| JULIA BORJA EMMANUEL,<br><br>              Plaintiff,<br><br>    -vs-<br><br>GUAM SEVENTH-DAY ADVENTIST<br>CLINIC, GUAM-MICRONESIA<br>MISSION, MICHAEL MAHONEY, and<br>DOES 1 through 10,<br><br>              Defendants. | CIVIL CASE NO. 03-00030<br><br><br>**PLAINTIFF'S POST TRIAL BRIEF** |

**COMES NOW**, Mrs. Julia Borja Emmanuel ("Plaintiff") who filed suit under 42 U.S.C. § 2000e et seq. ("Title VII") against Guam Seventh-Day Adventist, Guam-Micronesia Mission, and Michael Mahoney (collectively referred to as "Clinic"). This matter was taken before this Court on a bench trial on December 6, 2005. After the close of the evidence, this Court ordered that the parties submit their post trial brief. As such, the Plaintiff submits the following memorandum of points and authorities in support of her claim of intentional discrimination and request for remedy.

ORIGINAL

Page 1 of 31
Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Case 1:03-cv-00030    Document 117    Filed 01/20/2006    Page 1 of 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This post-trial brief will address issues that were raised at the trial or after the close of previous briefing by Defendants, and supplements as well as incorporates all of Plaintiff's previous briefing in the case. This brief will not seek to summarize or re-state any of the testimony at the trial, except as it relates to the selected legal issues discussed below. In addition, the brief will not address the plaintiff's prima facie case, since according to the Court; the evidence necessary to support the Plaintiff's burden has been established. As such, this trial brief should not recite the facts and the legal consequences of the evidence for the prima facie case.

Accordingly, and as stated by this Court, the Plaintiff has established her prima facie burden of employment discrimination. Plaintiff is a member of a protected class, which is "Chamorro from Guam." Plaintiff was qualified for her position, since she was the Human Resource Director, in good standing for 11 years and she had no employment disciplinary actions or ever received a negative evaluation. Plaintiff experienced an adverse employment action when she was demoted and her salary was reduced and major benefits were taken away.

Finally, Plaintiff has proven that similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination when, other individuals, not from Guam and mostly Caucasian, in the administrative positions or whom received similar benefits were treated more favorably. Nevertheless, if this Court requires, Plaintiff will submit the necessary supplemental brief as to the prima facie case.

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030

Case 1:03-cv-00030     Document 117     Filed 01/20/2006     Page 2 of 15

## II. THE EXCUSE BY DEFENDANTS ARE UNTRUE AND UNSUBSTANTIATED BY EVIDENCE

### A. Pretext Based Reasons

Once an employee has established a prima facie case of discrimination, "a presumption that the employer unlawfully discriminated against the employee" must be defeated. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 917 (9th Cir.. 1997) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (internal quotation omitted)). The employer now has the burden to rebut the presumption by articulating "a legitimate nondiscriminatory reason for the action." Id. The court has indicated that if the employer meets its burden, the employee must prove both that the employer's alleged reason was false and that discrimination was the real reason.

The Clinic has failed to meet this burden. It has not articulated a single legitimate nondiscriminatory reason for Plaintiff's demotion. It has used the excuse of bad performance on behalf of Plaintiff or a reduction in cost for the Clinic, as reasons. However, as the evidence was presented, this Court saw that the reasons given were merely a pretext to the Clinic's intentional discrimination against Plaintiff. The Plaintiff has demonstrated that the Clinic's reasons were not the true reason for Plaintiff reclassification. Plaintiff has proven this by; using the facts established by Defendant's chief financial officer, showing how others of a different class working for the Plaintiff were overlooked for cost savings and using the Defendant's proffered financial statements to dispel financial distress.

### B. Performance Based

In the Defendants pretrial brief they alluded to the bogus excuse of Plaintiff performance as a factor when they demoted Plaintiff. Testimony from the directors and even Michael Mahoney ("Mahoney") indicate that Plaintiff was an employee who had good or even excellent

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Plaintiff's Post-Trial Brief

employment performance record. Plaintiff was consistently reappointed and maintained a good performance record, if not excellent. Plaintiff's demotion was not performance based. Basically, this shows the pretextual motive of the clinic or that the clinic was searching for an excuse to give the Court for their intentional discrimination of Plaintiff. The Clinic raise the issue as a reason for the demotion and yet abandon the issue at the midst of trial. They cannot have it both ways. The Clinic argue the reason for the demotion and then refute their own reason with evidence that shows that Plaintiff was in fact a model employee. The excuse is a complete sham with the intent to disrupt from their true intention of racial motivated discrimination.

## C.     Cost Savings Measure or Financial Distress

This excuse is also a complete sham. This excuse was used to cover up the intentional discrimination against Plaintiff. Violet Cruz, voting member, testified she saw no financials. She did not even know how much the clinic was to save. Mahoney testified about the financial situation of the clinic. The testimony elicited indicated that the clinic was actually making more money than the years prior. He testified that the clinic was getting out of the slump.

Mr. Kerstan Reese, the chief financial officer, testified through his deposition that he felt that the claims of financial distress "were artificial" and the financial situation of the Clinic was improving. Mr. Reese stated that his recommendations for efficiencies, which did not involve personnel cuts, were received with less favorable attention compared to recommendation made by others regarding personnel cuts. The facts established Mr. Reese, alone, prove that the reason proffered by the Clinic of financial distress was not the true reason for the Plaintiff's reclassification, but merely a pretext.

The actions taken against Plaintiff was only taken against her because she was in fact targeted because she is from Guam and Chamorro and because she did not deserve the

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030

interdivisional employee ("IDE") benefits that Caucasians from the U.S. mainland receive. The action was not done across the board. It did not reduce the pay of any other persons in the clinic. It was basically because Plaintiff is a Chamorro and she is from Guam.

Others employees were overlooked for cost savings consideration. From Mr. Reese deposition, testimony from Mahoney, Mrs. Jolene Brecht, Mrs. Violet Cruz, and Mr. Remenester Jano, exhibits from Clinic Board minutes and AD HOC recommendation prove that Plaintiff was targeted as intentional discrimination. Mrs. Jolene Brecht a Caucasian was hired on Guam but was given off-island status and reclassified as an IDE. Mr. Jordan Urban a Caucasian was hired on Guam but was given off-island status and reclassified as an IDE. He was actually living in Guam for over a decade before being hired by the Clinic. He first hired as a "local hire" and was subsequently reclassified to IDE status.

The IDE status has more costly benefits and higher pay than local hire. Mrs. Brecht was reclassified at the time the clinic claimed financial difficulties. Mr. Urban was reclassified at the time the AD HOC Committee were considering the Plaintiff for reclassification. The AD HOC Committee to Save Money and Find Efficiencies was formed because of the alleged financial distress. They were supposed to make recommendations to alleviate the financial distress. Mrs. Buffie Lloyd was a clinic employee and IDE spouse. She changed working from full time to part time. She noticed she was still credited with full time benefits. She brought this discrepancy to the Plaintiff. She wanted her benefits to reflect her part time status. Plaintiff followed protocol by notifying Mahoney of the necessary changes, twice. However, no change occurred prompting Mrs. Lloyd to point this out to the Plaintiff. Plaintiff asked Mrs. Lloyd to go directly to Mahoney for action since Mahoney was receptive. Mahoney told the Plaintiff to leave Mrs. Lloyd status at full time.

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030

Mrs. Lloyd request to reduce her full time benefits would have saved the clinic money. The request and Mahoney's directive was to keep her at full time status roughly between the time when the AD HOC was formulating their cost cutting recommendations and when the Plaintiff was reclassified. This shows disparate treatment because of race/ethnicity. This proves that cost savings as the reason for the Plaintiff's reclassification was false and done with the mere intention of discriminating against Plaintiff.

In the financial statements provided by Clinic, it showed large non cash expenses that seem to be flukes. The Clinic owns property that is worth millions and no consideration was made to make any bank loans to minimize any personnel cuts. The Clinic is non profit and it does not have the added pressure of making a profit.

### III. THE INTENTIONAL DISCRIMINATORY ACTS OF AN ACTOR WITHIN THE CLINIC BOARD IS ATTRIBUTABLE TO THE CLINIC BOARD AS WHOLE WHEN THEY MADE THE ADVERSE DECISION TO DEMOTE PLAINTIFF.

A group of decision makers are responsible for their conduct as a board as a whole even if the discriminatory act was committed by one person. In Lam v. University of Hawai'I et al., 40 F.3d 1551 (9th Cir. 1994), there was little question that the group of decision-makers was influenced by biased individuals. In Lam, the plaintiff, a female of Vietnamese descent, claimed that the defendant university's law school discriminated against her on the basis of race, sex and national origin when she applied for the position of director of the law school's Pacific Asian Legal Studies (PALS) program. The court reversed the lower court's award of summary judgment in favor of the defendants, holding that there was sufficient evidence of bias on the part of at least two male professors to preclude summary judgment.

In reaching that decision, the court noted that because the law school's faculty was small (15 members) and because "great emphasis [was] placed on collegiality and consensus decision

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Case 1:03-cv-00030    Document 117    Filed 01/20/2006    Page 6 of 15

making, even a single person's biases may be relatively influential." Id. at1560. The court added: "That is particularly true where, as here, that person plays a significant role in the selection process and leads the fight pro or con with respect to a particular candidate." Id.

The professor, who had a previous "run-in" with the plaintiff and who had a biased attitude toward women and Asians, headed the law school's PALS appointments committee for a month and had disparaged the plaintiff's abilities before the committee and the faculty as a whole, asserting at one point that she "was unfit to teach anywhere on the [university's] campus." Id. at1556. As the court noted, he played "a significant role in the selection process" and led the fight against the plaintiff in that process. The court noted that there was thus little question as to that professor's influence. The court stated that a plaintiff at a university need not prove discrimination at every stage of the decision making process; impermissible bias at any point may be sufficient to sustain liability. Id. at 1560-1561.

The facts in Lam are similar to the present case; the influence of one of the above-mentioned male professors was obvious, as here. Mahoney, the clinic administrator was very influential. As was his predecessor, Donald Wiedleman. Mahoney who had previous run in with Plaintiff had a biased attitude towards locals or Chamorro people. He stated that Plaintiff operated at a local mind set. Mahoney disparaged Plaintiff's ability to the board without any justification. Mahoney played a significant role in the demotion of Plaintiff. He made the cost cutting recommendation, he was on the ad hoc committee to for cost savings, he proposed Plaintiff position for reclassification, he was one of the members who allegedly conducted the wage comparison of Plaintiff's position, and he was a voting member of the board that demoted Plaintiff. Basically, Mahoney led the fight to demote Plaintiff. As such, there is little question of Mahoney's influence.

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Plaintiff's Post-Trial Brief          Document 117          Filed 01/20/2006          Page 7 of 15

In *Barbano v. Madison County*, 922 F.2d 139 (2nd Cir.1990), a Title VII gender discrimination case. The court stated that "discrimination by one individual does not necessarily imply that a collective decision-making body of which the individual is a member also discriminated." Id. at142. The court held that the discriminatory comments of one member of an interviewing committee were sufficient to uphold a finding of discrimination in the hiring decision. The court concluded "knowing and informed toleration of discriminatory statements by those participating in the interview constitutes evidence of discrimination by all those present." Id. at 143.

Here, Mahoney treated Plaintiff with disrespect since he became administrator of the clinic. He disregarded any suggestions or input Plaintiff had when the clinic was in a crisis situation. Plaintiff was the only administrator available.

Similarly, in *Gutzwiller v. Fenik et al.*, 860 F. 2d 1317 (6th Cir. 1988), the court there was even less question than in *Lam* as to whether the group of decision-makers was influenced by discriminatory individuals. The plaintiff in *Gutzwiller*, a female assistant professor in the defendant university's classics department, claimed that defendants' decision to deny her tenure was the result of sex discrimination. The court upheld a finding of discrimination against two of the defendants, the head of the classics department and the chairman of the department's tenure committee, rejecting their argument that they were only two votes in a process that required decisions at four different levels. According to the court, the evidence showed that most of the members of the tenure committee, "by their own admission, lacked the expertise to properly judge [the plaintiff's] work and, therefore, relied exclusively upon the opinion of [the committee chairman]." Id. at 1327.

The court stated that the committee chairman and the department head also gave the dean

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030

of the college of arts and sciences, who also had a say in the tenure decision, "consistently negative interpretations [of] what were generally favorable evaluations of [the plaintiff's] scholarship." Id. at 1326. The court stated that there was also evidence that these two defendants, who were "the most powerful members of the Department," told at least one member of the tenure committee that they intended to vote against tenure for the plaintiff. Id. at 1327.

Also, in Jalal v. Columbia University in the City of New York, 4 F.Supp.2d 224 (S.D.N.Y. 1998), wherein the court stated that "it is certainly true that a Title VII plaintiff need not show that every one--or even a majority--of a group of decision makers was biased in order to prove that a decision was infected by discrimination." Id. at 238 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 256, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). The court stated that "cases that address this issue, bias can be attributed to the group as a whole via its members' failure to object to a colleague's facially discriminatory statements." Id. The court accepted "the proposition that, under certain circumstances, facially neutral comments made by a biased committee member may raise a rational inference that bias impermissibly affected the committee's decision." Id. at 239 (citing *Lam v. University of Hawaii*, 40 F.3d 1551, 1560 (9th Cir.1994)). The court stated the fact finder "could probably infer that a committee member had a degree of influence on the committee's decisions from the mere fact of her participation in deliberations." Id.

Like the instant case, where the alleged discriminatory influence consisted of comments and actions from an identified individual, in Gutzwiller the discriminatory influence consisted of actions (negative interpretations of evaluations of the plaintiff's scholarship) as well as comments. Given the clear similarity between the facts of the instant case and those in Gutzwiller, there is reason here infer intentional discrimination by the Clinic's Board.

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Plaintiff's Post-Trial Brief

1     Mahoney treated Plaintiff less favorably throughout his administration. He put barriers in

2     her path that were not encountered by other directors who had IDE status. He would intentionally

3     leave Plaintiff out of the loop when it came to the supervision of her subordinates. Mahoney

4     imposed higher standards on Plaintiff that he did not expect of anyone else. Mahoney

5     intentionally engaged in a calculated effort over time to insure that Plaintiff was not worthy of

6     IDE type benefits. The clinic's discriminatory intent could be inferred through the conduct of

7     Mahoney. One such instance was in a letter Mahoney wrote that Julie "operates at a local mind

8     set ." Plaintiff's Exhibit   The evidence showed that no IDE member had ever had their status

9

10    taken away for cost cutting measures. Further, the evidence showed Mahoney's discriminatory

11    intent in the manner in which he conducted the cost cutting measures was targeted at a single

12    person, the only Chamorro director. Mahoney suggested Plaintiff's position was not required and

13    that the clinic needed to save money, yet, Plaintiff was employed at that same position for over 11

14    years. Plaintiff introduced evidence that white employees and people from the mainland U.S.

15    routinely kept their status even after misconduct or a change in work status to part time status.

16    Board members have testified of the control and substantial influence that Mahoney has over the

17    board.

18

19        In further evidence of discriminatory intent, this Court could rely on the consistently

20    positive evaluation of Plaintiff. In this, the Court reviewed the evidence that Mahoney's wage

21    analysis was a sham and that he and Dr. Geslani had conducted an unfair and uneducated wage

22    analysis. Geslani and Mahoney failed to consider all the factors necessary for a proper wage

23    analysis. However, that did not stop them from reporting their analysis to the board. The Board

24    reviewed and relied on Mahoney and Geslani for a proper wage analysis for Plaintiff's position.

25    A proper study or analysis was never completed.

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Case 1:03-cv-00030   Document 117   Filed 01/20/2006   Page 10 of 15

At the same time, evidence of Mahoney's discriminatory intent could also be reasonably interpreted by this Court to demonstrate the discriminatory motive of the clinic board. The clinic board, acquiesced to the recommendation of Mahoney. The board believed the cost cutting measure and the bad performance of Plaintiff would justify the demotion. They were told that the evaluation was conducted to prove that it was a necessary cost savings measure. In fact, the evidence suggests that the clinic board never even referred to the financials of the clinic nor had they understood the amount saved or the financial impact of their actions demoting Plaintiff. Based on the totality of this evidence, this Court could infer that Mahoney and the clinic board intentionally discriminated against Plaintiff because of her race or national origin.

The clinic can argue that Mahoney himself could not terminate Plaintiff. This Court could find that the discriminatory intent of Mahoney was more likely than not the basis for Plaintiff's demotion. By the member's own admission, they lacked the expertise to properly judge the cost savings measure and, therefore, relied exclusively upon the opinion of Mahoney, the clinic administrator and a clinic board member. Indeed, majority of he clinic board members did not even read any significant part of the clinic's financials. There is evidence that Mahoney is the most powerful member of the Clinic board. There is evidence that Mahoney in ultimately influencing the opinions and votes of the other board members caused Plaintiff to be demoted. According to members of the clinic board, the vote was unanimous. This Court could reasonably find that the actions of Mahoney influenced the other members of the clinic board to vote for Plaintiff's eventual demotion. Therefore, a causal link sufficient to satisfy the "but for" standard has been established.

## IV. THE ACTION OF THE BOARD WHEN THEY DEMOTED PLAINTIFF WAS INTENTIONAL DISCRIMINATION AND THE EXCUSES PROFFERED BY DEFENDANTS ARE A SHAM

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030

1    Despite the actions of Mahoney, the board it self operates in an intentional discriminatory

2  manner. The clinic board's conduct can be inferred from the actions they take in favor or against

3  other employees.

4  **A.    Intentional Discrimination at the Clinic is Perverse and Entrenched**

5      The discrimination is so perverse and entrenched in the Clinics' employment practices.

6  When the Clinic hires a person from the U.S. mainland, they offer them benefits far and beyond

7  what is offered to people who are hired on Guam. That is blatant discrimination. The people

8  most affected by this discrimination are the Chamorro people, the majority race on Guam. These

9  actions follow with the Clinics' racist mindset. Chamorros operate at a local mindset. Chamorros

10 are inadequate. Chamorros are not up to the same standards as their counter-parts in the U.S.

11 Mainland. The majority of the people recruited in the U.S. mainland are of Caucasian decent.

12 Thus, the Clinic in its actions intentionally discriminate. The Clinic treat Caucasians living on

13 Guam with the same manner as a Caucasian hired from the U.S. mainland. No Chamorro has

14 been given IDE status on Guam. People from the Mainland United States routinely get IDE

15 status and benefits far and beyond what is given to people who are hired on Guam.

16     Employee Roger Natividad was a long time employee and a fine employee. He held a

17 director position for a number of years, for the maintenance division. As director he received

18 IDE benefits and a salary. Administrator Wiedemann wanted to ensure that the local staff get

19 what they deserve, local pay. Administrator Wiedemann came to Plaintiff and informed her of

20 allegations of bad performance against Roger. Plaintiff investigated the allegations and the

21 allegations were found to be unsubstantiated. Action could not be taken against Roger for that

22 reason.

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030

Mahoney testified that Roger was demoted to a manager position because of cost saving measures. Roger's daughter was out of college and he was a major expense to the clinic and he was not white nor was he from the mainland. He is Filipino. Mahoney told him about his demotion and he never questioned the actions taken against him and just went along with the process.

Employee Frances Mantanona was also a long time employee. Qualified for the position that was created for her as Personnel Director. She was being groomed for the top administrator position. She eventually became the associate administrator for the clinic. While under the administration of administrator Wiedemann, she was discriminated against. This time the administrator took this a step farther. The administrator set up goals for Mantanona to meet. Mantanona later found that these goals were unrealistic. She was told to quit her masters program which she was taking on her own time. She was demoted to collections department. During the board meeting Jano spoke out about Mantanona's demotion. He claims the board needed to support the locals and he refused to vote for Mantanona's demotion. Her salary was changed to hourly and her IDE equivalent benefits were taken away. Mantanona resigned her position with the clinic.

The clinic was on their way to clean house and remove all the locals from administration and the luxuries that come along with the position. After Plaintiff filed her current discrimination claim, the clinic rehired Mantanona as administrator and gave her a salary and IDE equivalent benefits.

## B. Plaintiff's Exhibit 56 on its Face is a Prime Example of the Intentional discrimination of the Clinic Board

Lets us examine Plaintiff's exhibit 56. Exh. 56 is the July 10, 2003 clinic board minutes for the Guam SDA. This document is not in dispute. On the four corners of this document we

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030

can infer the intentional discriminatory action taken against Plaintiff, by the board. The members are listed. In this document we can infer the discriminatory actions of the board as a whole. In line item 03-036 the board voted to change the job classification of the Human Resource Director to a Human Resource Manager. It was definitely a demotion since it changed her position from an administrative to a non-administrative position and from a salary to an hourly employee position. Her benefits reduced to that of an hourly position.

The next item for discussion was 03-038, which reclassified employee Eunice Wresch from salary to hurly. Mrs. Wresch was an IDE spouse so, no matter what, she would be receiving the same benefits. Mrs. Wresch was a sickly lady who was dying of cancer. She was often off-island for medical treatment. Salary employees have to work more hours than hourly employees. We argue that her wage was change to actually assist her. She did not need to work as many hours and reduce the demand on her. She died a few months after the reclassification.

The next item for discussion was 03-039, which approved the leave request by Mr. Reese. He submitted the request that he will not return after his furlough and will be seeking a permanent return. His position was not filled after he left Guam. Mr. Reese's position was created just for him.

Item 03-040, the board acknowledged the administrator position was an expense to the clinic. The board voted to retain Mr. Mahoney as the administrator. He is an IDE status. He was hired from the mainland. He received benefits and salary. He is white male. He volunteered to resign and the board refused. He later resigned and Mrs. Mantanona was hired locally as the administrator on contract status.

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Plaintiff's Post Trial Brief

Item 03-042, the board discussed the chief accountant's position and they decided not to make any changes to the position. This position is an expense to the clinic and was held by Jordan C. Urban a white male who was on a IDE status.

Item 03-036, the board voted to have a written report about the bidding of the janitorial contract held by Plaintiff's husband. A bid was previously sent out and the matter was tabled. Mr. Emmanuel's bid was the best and the clinic could not justify a change at that time.

All these items discussed and actions taken by the clinic board provides an inference of intentional discrimination against Plaintiff. Plaintiff was a good employee. Her demotion was involuntary.

## C.     Persistent Pattern of Intentional Racial Discrimination

The court in Lam, *supra*, indicated that log term racial discrimination that demonstrates a "persistent pattern" of racial hostility is admissible evidence. Id. at 1562.

Mahoney stated that after Plaintiff filed this lawsuit, he indicated that Plaintiff should be transferred to the Wellness Center because she was a good cook. At a meeting on September 21, 2001, Mahoney stated that Plaintiff operates at a local cultural mind set and he also made reference to Plaintiff being Chamorro. This alone shows that Mahoney has targeted Plaintiff since the year 2001. On February 15, 1999, Mr. Donald Weidemann wrote a letter indicating he was unhappy with Mrs. Mantanona performance and made reference to her being local, when expressed his displeasure with Mrs. Mantanona. Mrs. Mantanona is Chamorro. These facts support the contention that the Chamorro people are targeted by the administration because they are Chamorro.

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Plaintiff's Opposition

**D. Plaintiff and her Family were Targeted**

The financial statements used by the Clinic that they claim show a financial distress was not available to the clinic board at the time they voted for Plaintiff's reclassification. Plaintiff and her husband, owner of De Enterprise were the only ones who directly and significantly affected by the recommendations of the AD HOC Committee.

**E. Employees Connected to Chamorro People are Discriminated Against**

Mr. Roger Nativiadad was discriminated against by his association with Chamorro people and living on Guam. Mrs. Violet Cruz was refused IDE status and benefits, she previously held, because she was married to a Chamorro man. Only because her husband was Chamorro, did she qualify again for her IDE status and benefits. Dr. Stalnecker testified that he was not hired at the clinic because "he sided too much with the locals" Local was once again used interchangeably with Chamorro.

Mr. Natividad, Mrs. Violet Cruz, and Dr. Stalnecker suffered discrimination even if they were not Chamorro. The association with Chamorro alone can deprive an employee of certain rights and privileges.

**Disparate Treatment**

As previously mentioned, Mrs. Brecht reclassified to IDE, Mr. Urban reclassified to IDE. Mrs. Cruz was an IDE nurse in the late 1950's, she married a Chamorro, she could not return to the Clinic IDE benefits. Mrs. Wresch is a Caucasian IDE spouse was reclassified from salary to hourly, at the same time as the Plaintiff, she kept her IDE benefits.

Mahoney and Mrs. Mantanona were both associate administrators at the same time. Weidemann hired Mahoney and, in time, found ways to remove Mrs. Mantanona from her position. At that time, was there really a need for two associate administrators when now they

Case 1:03-cv-00030 Document 117-2 Filed 01/20/2006 Page 1 of 16

don't even have one? While Mrs. Mantanona was associate administrator, she was given unattainable goals to fulfill and was told to withdraw from her masters program. She was demoted for poor performance. Six months later she resigned. Mrs. Mantanona was forced out of her position because she was Chamorro from Guam. On the stand she seemed hostile and you can hear the bias in her testimony. Who could fault her; she was recently hired as the current clinic administrator.

## V.   DISPARATE IMPACT

Plaintiff is not going to spend too much time on this argument. The facts and circumstances of the disparate impact has been proven and shown during trial. The hiring practice of the Clinic clearly indicates a substantial impact on the Chamorro population on Guam. The majority of the people on Guam are Chamorro. The Clinic refuses to allow Chamorro or people from Guam the IDE status. People, mostly Caucasians, hired on the U.S. mainland are recruited at a hire pay, better benefits, and better employment protection. As such, a clear disparate impact exists and this intentional discrimination clearly affects the Plaintiff when she was hired and also in the impact it had on her demotion.

Plaintiff was impacted when demoted because she was given hourly benefits. Hourly employees are not IDE. IDE employees are only recruited from the Mainland. People hired on Guam are not given IDE status. The effect is that the people not hired on Guam are of different race or nationality. Thus, the disparate impact is on the people hired on Guam. People hired on Guam can only get hourly status and not IDE. The majority population on Guam is Chamorro. The same race and national origin as Plaintiff. Therefore, the effect of the disparate impact on hiring Locals v. IDE directly impact on Plaintiff since, when she was demoted she was given hourly status and not IDE status.

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Case 1:03-cv-00030    Document 117-2    Filed 01/20/2006    Page 2 of 16

## VI. PLAINTIFF'S RELIEF REQUESTED

"The primary objectives of Title VII are to eliminate all vestiges of discrimination in the workplace, and to make persons whole who have suffered unlawful discrimination." Thorne v. City of El Segundo, 802 F.2d 1131 (9th Cir. 1986) (citing *Albemarle Paper Company v. Moody*, 422 U.S. 405, 417, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975)).

Title VII authorizes the "if the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may . . . order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement . . . with . . . back pay . . .or any other equitable relief as the court deems appropriate." 42 U.S.C.A. § 2000e-5 (g)(1) (West 2005)

### A. Back-pay

Backpay is presumptively favored as a make-whole remedy and, absent exceptional circumstances, should be awarded to successful employment discrimination plaintiffs. Gutzwiller v. Fenik et al., 860 F. 2d 1317 (6th Cir. 1988) (citing *Rasimas v. Michigan Department of Mental Health*, 714 F.2d 614, 626 (6th Cir.1983), cert. denied, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984)). The back pay award should completely redress the economic injury the plaintiff has suffered as a result of discrimination. Id. It should include the salary, including any raises, which plaintiff would have received but for the discrimination, as well as sick leave, vacation pay, pension benefits and other fringe benefits she would have received but for discrimination. Id.

Here, Plaintiff is requesting that the difference in her salary, including any raises, which Plaintiff would have received but for the discrimination, as well as sick leave, vacation pay,

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030

pension benefits and other fringe benefits she would have received but for discrimination, be paid to her as back pay from time she was demoted to the time of Judgment.

Back pay for her demotion and intentional discrimination when her position was changed from Human Resources Director to Human Resources Manager. The back pay reflects the loss of income from the difference in what she made originally compared to her demoted status. The demotion caused a loss of $73,447.36 total. From September 1, 2003 to December 31, 2005. Plaintiff claims $73,447.36 in back pay, not subject to the statutory caps.

**B.    Front Pay or Reinstatement**

The Supreme Court of the United Sates in <u>Pollard v. E.I. du Pont de Nemours & Co.</u>, 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001), held that "front pay is not an element of compensatory damages" and thus is not subject to the damages cap imposed by § 1981a(b)(3). <u>Id</u>. at 848. The Court stated that "backpay" given after the date of the judgment is call "front pay." <u>Id</u>. at 849. The Court mentioned that "front pay awards are made in lieu of reinstatement." <u>Id</u>. at 853. The Court held that in addition to front pay, the Court was authorized to allow for compensatory and punitive damages.

"Most courts . . . have held that front pay is a viable equitable remedy to be awarded in the district court's discretion when reinstatement is impractical or impossible." <u>Luu v. Seagate Technology, Inc.</u>, 2001 WL 920031 (D. Minn. 2001) (citing *Kramer v. Logan County School Dist.*, 157 F.3d 620, 625-26 (8th Cir.1998); *Martini v. Federal nat'l Mortgage Ass'n*, 178 F.3d 1136, 1348-49; *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 556 (10th Cir.1999); <u>see also</u> *Rivera v. Baccarat, Inc.*, 34 F.Supp.2d 870, 878 (S.D.N.Y.1999); *Bizelli v. Parker Amchem,* 17 F.Supp.2d 949, 954 n.2 (E.D.Mo.1998)). The court stated that given the treatment of the plaintiff in that case and the ongoing lawsuit, reinstatement was not an option. The stated the next steps

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030

1  were to the front pay award, determine the proper duration, estimate the yearly loss in income

2  minus the mitigating damages.

3      Here, the Plaintiff request this Court award her front pay in lieu of reinstatement. As the

4  Court has noticed at trial, the relationship Plaintiff has with Clinic has broken down. The

5  litigation exacerbates the situation. She is being treated differently and in a hostile manner. The

6  evidence shown at trial indicates that Plaintiff planned to work another 17 years at the Clinic as

7  the Human Resources Director or maybe some higher or more lucrative position within the

8  Clinic. It is only reasonable that this Court award her that amount and the number of years

9  requested. The Clinic was Plaintiff's life, her church, her family, and friends are all part of this

10  work environment. Plaintiff will not be able to find a position on Guam that is comparable in

11  duties and compensation. Plaintiff should not be required to leave Guam to seek a job. Plaintiff

12  worked extremely hard to climb the latter of success at the Clinic. It is impossible to know

13  whether she can start again and find the same compensation and position she received. Plaintiff

14  did not ask for this intentional discrimination. She should not be the one who should be made to

15  suffer the consequences of such illegal actions. The only choice for this Court seems to be to

16  award Plaintiff in front pay as compensation for 17 possible years of future employment which

17  has been taken away from Plaintiff because of this intention discrimination.

18      The Plaintiff believes she is entitled to compensation for the loss of income as HR

19  Director. The Plaintiff strongly believes that reinstatement would serve her harm and expose her

20  to cruelty. She believes the following facts shows that reinstatement is inappropriate and that the

21  considerations for front pay are supported.

22      Plaintiff request front pay from the conclusion of the time of judgment to ten years of

23  salary. Plaintiff estimates the amount to be $6002.23 monthly. She request that she receive front

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Case 1:03-cv-00030  Document 117-2  Filed 01/20/2006  Page 5 of 16

pay every month for 10 years. Plaintiff derives this calculation from expected wages of $3960.00, home subsidy of $1350.00, tax subsidy of $584.00, and auto insurance subsidy of $108.33, for a total of $6002.33 monthly. Plaintiff request the annual amount of $72,027.96 for a period of ten years for a total amount of $ 720,279.60.

## C. Compensatory Damages

The Plaintiff may also seek compensatory and punitive damages. Title VII also authorizes that the "complaining party may recover punitive damages . . . against a respondent . . . if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual. 42 U.S.C.A. § 1981a (b)(1) (West 2005). "[C]ompensatory damages awarded . . . shall not include backpay, interest on backpay, or any other type of relief authorized." 42 U.S.C.A. § 1981a (b)(2) (West 2005).

The Plaintiff suffers and continues to suffer from the emotional and physical stress that came with the intentional discrimination. She suffers from embarrassment and ridicule. Her life has changed radically and for the worst. She no longer can live the life she has led since she was first married. Her husband and her kids have stated the change they see in Plaintiff. The Plaintiff herself spoke to the Court in a really emotional state. Plaintiff's treating physician testified about Plaintiff's symptoms and her diagnosis of Plaintiff. Along with her demotion, her family suffered financially when the clinic refused to continue the cleaning contract with Plaintiff's husband, De Enterprise.

Plaintiff was asked to and attended Ad Council which decided employment with the clinic because of the lawsuit. Dr. Ramley prayed for her after telling her people were talking about with a heavy heart. Upon checking the mail daily, Mr. Emmanuel receives an invitation to a Clinic

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Plaintiff's Post-Trial Brief    Document 117-2    Filed 01/20/2006    Page 6 of 16

banquet on 11/28/03 with an RSVP expiration of 11/12/03, two weeks prior. De Enterprise lost it cleaning service contract which it held for an uninterrupted for 12 years. The AD HOC committee on cost savings target the plaintiff and Mr. Emmanuel as the only ones to get involuntary reclassification.

Mr. Emmanuel had the best price in the bids. One month after the Plaintiff files the lawsuit, and just two months after the previous bid the clinic request new bidding for janitorial services even if scope of work or size had not changed. Mr. Emmanuel was notified by Mr. Urban that they were terminating services for De Enterprise (cleaning service).

**Plaintiff Suffers at her Church**

Mr. Mahoney went to the church Elders and the mission officers to complain about Plaintiff's lawsuit. He wanted the Emmanuel's to step down from church leadership. The Elders met with the Plaintiff and requested that she step down from the nominating committee. Church member Mrs. Leon prayed that she can forgive the plaintiff. Dr. Hugo Leon met with Plaintiff for two hours talking about the wrongness of the lawsuit with Mr. Emmanuel.

The church was viewed sacred; it served as a shelter, refuge, a place of comfort. In this case, the church was used as a weapon to carry out retaliatory acts. Prayer and communion were used to inflict harm.

**Plaintiff Suffers in her Community**

The Plaintiff stopped at a shoe store and was asked what kind of Christian are you? Why are you suing the clinic? Are you trying to get rich? Plaintiff was devastated. Mr. Emmanuel was asked by his supervisor the lawsuit against the clinic. His supervisor expressed that she had "reservations" about Christians suing the church. Mr. Emmanuel was appraised by two coworkers that heard negative comments about the Plaintiff and her family.

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Plaintiff's Post Trial Brief    Case 1:03-cv-00030    Document 117-2    Filed 01/20/2006    Page 7 of 16

**Plaintiff Suffer at her Volunteer Children's Ministries**

The Plaintiff lost her position as Children's Ministry Director was a clear illustration of her situation. Because of illegal discrimination, this position which she valued was all taken away.

Plaintiff ask for the maximum amount of $300,000 in compensatory damages.

**D.     Punitive damages**

In addition to compensatory damages Plaintiff seeks punitive damages against Clinic. Section 1981a of Title VII authorizes that "[I]n an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C.A. §§ 2000e-5 or 2000e-16] against a respondent who engaged in unlawful intentional discrimination . . ., the complaining party may recover compensatory and punitive damages as allowed . . ., in addition to any relief authorized by . . . the Civil Rights Act of 1964, from the respondent.  42 U.S.C.A. § 1981a (a)(1) (West 2005).

> The Title indicates that:
>
> It also limits the punitives to the "sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party--
>
> (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;
>
> (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and
>
> (C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and
>
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C.A. § 1981a (b)(3) (West 2005).

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Plaintiff's Post Trial Brief

1    The next issue is whether this Court should award punitive damages to Plaintiff. Based on

2    the evidence presented, a punitive damages award is proper and should be ordered by this Court.

3    The Supreme Court addressed the issue of punitive damages in section 1983 actions in <u>Smith v.

4    Wade</u>, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).    In that case, the Court concluded

5
     that punitive damages are appropriately considered by the fact finder when there has been
6
7    "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal

8    law...."  Id. at 51, 103 S.Ct. at 1638.    Consistent with this standard, this Court should find

9    "reckless, willful or wanton behavior" inferred from the surrounding circumstances which can

10   provide the basis for a punitive damage award.

11        In this case, this Court should find that the clinic acted recklessly and with callous
12
     disregard for Plaintiffs rights as it is supported by substantial evidence. In support of the punitive
13
14   request the Plaintiff offers the testimony of Mr. Reese and Mr. Jano. Mr. Reese warned the board

15   of the possible illegal actions and violation of Plaintiff's civil rights. Mr. Jano gave a speech to

16   inform the board about the reason why Plaintiff should not be demoted. He stated that the clinic

17   should keep the locals in the administration. The Clinic continues to act with disregard when it

18   comes to Plaintiff. They denied her medical coverage when she sought care with Dr. Hofer.
19
     Mahoney spoke to church leaders about Plaintiff and her family's position with the SDA church.
20
21        The clinic owns property, buildings, and content worth $10,850,000.00. This excludes

22   revenues. As Mrs. Mantanona testified financially, they are doing great. In addition, the Guam

23   Micronesian Mission which encompass the clinic assets also list assets worth $34,394,150.00.

24   This worth excludes two churches and schools on Guam.

25

26

27

28
Page 24 of 31
Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Plaintiff's Post Trial Brief    Document 117-2    Filed 01/20/2006    Page 9 of 16

1    The Clinic, including the Guam-Micronesia Mission, has over 501 employees. The

2    triennial report indicates Guam-Micronesia Mission which include the Clinic has 558 paid

3    employees.

4    So if the intent of punitive awards is to punish the respondent, and to deter future

5    discriminatory conduct. The concept is to sting, but not to destroy. Therefore, given the financial

6    wealth and resources of the clinic, a $300,000.00 award for punitive damages may hardly be felt.

7    Plaintiff ask for the maximum amount of $300,000 in punitive damages.

9    **E.    Attorneys' Fees and Cost of Suit**

10    The Title VII authorizes that "[I]n any action or proceeding under this subchapter the

11    court, in its discretion, may allow the prevailing party . . ., a reasonable attorney's fee (including

12    expert fees) as part of the costs . . . .

14    Here. Plaintiff request her attorneys' fees and cost of suit be paid. She argues that she is

15    entitled to the fees and cost because bringing a lawsuit of this nature is difficult. Plaintiff has

16    brought forward a legitimate claim of discrimination and because the intentional discrimination

17    by the clinic is so entrenched, she argues that she should be awarded attorneys' fees and the cost

18    of bringing the lawsuit.

## VII.    DEFENDANTS' HAVE NOT ESTABLISHED ANY SUBSEQUENT MISCONDUCT ON PART OF PLAINTIFF AND, IF IT DID, SHE IS PROTECTED UNDER THE ANTI-RETALIATION CLAUSE OF TITLE VII.

**A.    Based on the record as it exists, Defendants have failed to prove any subsequent misconduct on part of Plaintiff.**

23    The issue is whether after-acquired evidence of misconduct, if any, can reduce the relief

24    sought by Plaintiff. "The after-acquired evidence doctrine is a defense asserted by an employer

25    to shield it from liability or to limit available relief where, after an employee is unlawfully

26    terminated, the employer learns for the first time about employee misconduct or fraud that would

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030

1   have led to the discharge in any event." <u>Bergelson v. Laidlaw Transit, Inc.</u>, 141 F.3d 1173, 1998

2   WL 132970 at **4, (9th Cir. 1998) **unpublished** (citing *Camp v. Jeffer, Mangels, Butler &*

3   *Marmaro*, 35 Cal.App.4th 620, 41 Cal.Rptr.2d 329 (Cal.Ct.App.1995)).   The court stated that

4   "the determination of whether after-acquired evidence of employee wrongdoing will bar a

5   wrongful termination claim depends on the specific facts of the case and the type of employee

6

7   wrongdoing at issue." <u>Id</u>.

8        The burden of proof, with respect to after-acquired evidence of misconduct, rest on the

9   employer asserting the alleged misconduct.  In <u>O'Day v. McDonnell Douglas Helicopter Co.</u>, 79

10  F.3d 756 (9th Cir.1996), the court held that the burden rests on the employer to prove by a

11  preponderance of evidence that it would have discharged the employee regardless of its

12  discriminatory motive, at the remedy stage, because of the after-acquired evidence employee's

13  misconduct.

14

15       Here, the Clinic has failed to carry their burden.  The confidentiality agreement is

16  inapplicable.  If applicable, the clinic breached it worse.  Plaintiff was trying to disclose a

17  wrongful and illegal conduct.

18       The action that would be taken by the clinic for any alleged violation is basic retaliation

19  for reporting the Clinic's intentional discrimination.  Here, we have Mrs. Mantanona who

20  indicates that the Plaintiff actions are a violation of policy and that she may be terminated.

21  Plaintiff was not terminated.  In supposition posed on examination of Mrs. Mantanona, she was

22

23  asked whether she would terminate an employee who used a confidential document to uncover an

24  illegal act and she indicated that if an employee had used the documents to uncover a violation of

25  the law, she would not terminate the employee.

26

27

28

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Plaintiff's Post-Trial Brief     Document 117-2     Filed 01/20/2006     Page 11 of 16

The clinic is attempting to impose higher standards on Plaintiff in order to reduce her remedy and retaliate against her participation in this lawsuit. The Clinic and Mrs. Mantanona violated the same policy they seek to enforce. Mrs. Mantanona, herself, was not terminated for her violations of their so-called policy. This in fact shows that Plaintiff will not be terminated. Mrs. Mantanona, the Clinic administrator, delivered personnel documents to her attorney who in turn used the same documents as exhibit in defense of their claim. Marked as exhibits and delivered to this Court and to Plaintiff was Defendants' Exhibit B, K, L, Q, R, S, T, V, W, Z, BB, and so on, including pay checks and financials. Mrs. Mantanona, herself, admitted to violating the same policy. The personnel records she used was not authorized or released by the personnel concerned. Defendants did not show that Mrs. Mantanona herself who violated the clinic policy will be terminated, in fact, it shows otherwise.

They haven't even proven that the policy applies. The Clinic has the name would imply is a clinic which treats patients and maintain vital and confidential documents pertaining to patient care. The Policy as written indicates that it attempts to secure the information of patient care. In fact, nothing in the confidentiality agreement makes reference to the records here sought to be protected.

**B.    The Clinics' Aggressive Stance Against Plaintiff's Use of the Clinic's Personnel Documents Unlawful Retaliation**

Title VII of the Civil Rights Act protects the type of action as alleged by the Clinic, if any. The Act states that "[I]t shall be unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has . . . participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3 (a) (West 2005).

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Plaintiff's Post-Trial Brief

1    Some courts have connected the anti-retaliation statute to the remedy. In <u>Deravin v. Kerik</u>

2    <u>et al.</u>, 335 F.3d 195 (2nd Cir. 2003), the employee filed claims of race discrimination and

3    retaliation under Title VII. The court held that it "we must interpret Title VII's anti-retaliation

4    provision in light of Title VII's overall remedial purpose." <u>Id.</u> at 204 (citing *Robinson v. Shell Oil*

5    *Co.*, 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (2001)).

6

7    The purpose of the anti-retaliation "clause is to protect the employee who utilizes the tools

8    provided by Congress to protect his rights." <u>Laughlin v. Metropolitan Washington Airports</u>

9    <u>Auth.</u>, 952 F.Supp. 1129,1133 (quoting *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir.1990))

10   (internal quotes omitted).

11   Plaintiff's situation is far removed from those cases in which the employee committed

12   illegal acts or misappropriated confidential personnel documents which cause disruption to the

13   business in its attempts to collect evidence of intentional discrimination. In <u>McKennon v.</u>

14   <u>Nashville Banner Publishing Co.</u>, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the

15   plaintiff brought an action for age discrimination. The employer asserted and the lower court

16   agreed that after-acquired evidence of misconduct bars all remedies available under the Age

17   Discrimination in Employment Act of 1967 (ADEA). The Court held that after-acquired

18   evidence of wrongdoing that would result in termination does not bar all relief for an earlier

19   violation of Title VII by employer. The Court stated that when "an employer seeks to rely upon

20   after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such

21   severity that the employee in fact would have been terminated on those grounds alone if the

22   employer had known of it at the time of the discharge." Id. at 362-363.

23

24

25   Sometimes an employee's violations are so serious as to take him out of the protection

26   afforded by the anti-retaliation statute. In <u>O'Day v. McDonnell Douglas Helicopter Co.</u>, 79 F.3d

27

28

---

x

1    Some courts have connected the anti-retaliation statute to the remedy. In <u>Deravin v. Kerik</u>

2    <u>et al.</u>, 335 F.3d 195 (2nd Cir. 2003), the employee filed claims of race discrimination and

3    retaliation under Title VII. The court held that it "we must interpret Title VII's anti-retaliation

4    provision in light of Title VII's overall remedial purpose." <u>Id.</u> at 204 (citing *Robinson v. Shell Oil*

5    *Co.*, 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (2001)).

6    The purpose of the anti-retaliation "clause is to protect the employee who utilizes the tools

7    provided by Congress to protect his rights." <u>Laughlin v. Metropolitan Washington Airports</u>

8    <u>Auth.</u>, 952 F.Supp. 1129,1133 (quoting *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir.1990))

9    (internal quotes omitted).

10   Plaintiff's situation is far removed from those cases in which the employee committed

11   illegal acts or misappropriated confidential personnel documents which cause disruption to the

12   business in its attempts to collect evidence of intentional discrimination. In <u>McKennon v.</u>

13   <u>Nashville Banner Publishing Co.</u>, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the

14   plaintiff brought an action for age discrimination. The employer asserted and the lower court

15   agreed that after-acquired evidence of misconduct bars all remedies available under the Age

16   Discrimination in Employment Act of 1967 (ADEA). The Court held that after-acquired

17   evidence of wrongdoing that would result in termination does not bar all relief for an earlier

18   violation of Title VII by employer. The Court stated that when "an employer seeks to rely upon

19   after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such

20   severity that the employee in fact would have been terminated on those grounds alone if the

21   employer had known of it at the time of the discharge." Id. at 362-363.

22   Sometimes an employee's violations are so serious as to take him out of the protection

23   afforded by the anti-retaliation statute. In <u>O'Day v. McDonnell Douglas Helicopter Co.</u>, 79 F.3d

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Plaintiff's Post-Trial Brief

756 (9th Cir.1996), an employee was fired for committing a serious breach of trust. He rummaged through his supervisor's office for confidential documents, copied them and gave them to a co-worker. The documents were not meant for his inspection nor did he have legitimate access to the information. The court rejected the employee's claim that, because these actions were taken for the purported purpose of preserving evidence, the actions were protected by the anti-retaliation provisions, which are virtually identical to those in Title VII.

Compare this with the facts in Kempcke v. Monasanto Co., 132 F.3d 442 (8th Cir. 1998), wherein the employee discovered two documents that led to an age discrimination litigation. The issue was whether the employee engaged in protected activity when he delivered arguably incriminating company documents to his attorney. The court stated that employee's activity "was at least arguably oppositional or litigation activity, because it placed documents that might evidence discrimination in the hands of a legal professional who would litigate the issue on" employee's behalf if the matter could not be resolved informally. Id. at 445. The court held that "employee with a good faith reason to believe his employer is engaged in unlawful age discrimination 'has a legitimate interest in preserving evidence of [his employer's] unlawful employment practices.'" Id. (citing O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 763 (9th Cir.1996)).

O'Day is distinguishable. First, Plaintiff apparently did not rummage through her supervisor's office to locate documents to which she did not have access. Clinic has not provided evidence that the documents had been given to third parties not involved with this litigation. Plaintiff asserts and clinic argues that the documents she provided to her attorney were prepared for her or provided to her in her capacity as human resources director. Plaintiff never kept the originals of these documents or  after she was removed from her human resources position in

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Plaintiff's Post-Trial Brief

September 30, 2003. Second, Clinics' confidentiality policy relates to "medical and patient information," and includes customer information and other confidential customer date and medical materials. The policy does not clearly include the documents prepared by or provided to Plaintiff in her official duties not relating to customer or patient information. Apparently, Clinic did not show or explain that the policy specifically to include personnel information. Thus, the testimony by Mrs. Mantanona about the personnel information is subject to doubt. Finally, Plaintiff collected innocently acquired documents as evidence of an ongoing discrimination practice, discovering them in her capacity as human resources director and has not subsequently misused the documents, only providing them to her attorneys; there has not been the kind of employee misconduct that would justify withdrawing otherwise appropriate anti-retaliation protection.

In addition, the use of the documents by Plaintiff in this matter was strictly for litigation purposes. She delivered the documents to her attorney. Her attorney in turn delivered the document to the Defendants attorney and to the Court. Nothing has been established that a third party had even seen the documents.

Plaintiff was in the position of Human Resource Director. She had access to all the documents that are in her possession. She did not rifle through anyone's office. She did not break into the building and steel the documents. No illegal act was taken by Plaintiff in order to retrieve said documents. The originals of said documents remain in the human resource section and are kept in the place it is supposed to be. The evidence only shows that Plaintiff had copies of the documents in her possession and delivered said documents to her attorneys for litigation purposes, in order to prove an illegal act of discrimination. Her attorneys in turn delivered the documents as federal rule 26 disclosures and exhibits in this matter. Defendants have not proven

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Plaintiff's Post-Trial Brief

1    that the documents have been given to a third party, sold, or otherwise used by Plaintiff for

2    reasons other than for litigation purposes.

3                          **VIII.   INJUNCTIVE RELIEF**

4            The Plaintiff request for injunctive relief to address the retaliatory action just taken against

5    her by Clinic.  She request that this Court order Clinic to continue to make payments.  The clinic

6    placed the Plaintiff on administrative leave.  Now they take her pay away effective January 1,

7    2006. The Plaintiff request the Court  to enjoin the Clinic from withholding her pay.

8                          **IX.    CONCLUSION**

9            Civil rights case in employment discrimination is not usually proven by direct evidence of

10   intentional discrimination.  Plaintiffs' cannot normally provide a "smoking gun" to support their

11   allegations.  Normally, the cases proven are based on circumstantial evidence of intentional

12   discrimination.  This is a collection of the facts and circumstances of a particular situation,

13   particular employer, and particular employee which infer an adverse action of intentional

14   discrimination.  In addition, the case law which we present as precedent or persuasive is similar in

15   situation but we don't argue that it is or can it exactly recite the same factual events.

16           For the reasons stated, Mrs. Emmanuel requests a judgment against Defendants, damages,

17   costs, and attorney's fees.

18           Dated this 20th day of January, 2006.

19                                   **LUJAN, AGUIGUI & PEREZ LLP**

20                                   By:_____

21                                        **PETER C. PEREZ, ESQ.**
                                          **PETER J. SABLAN, ESQ.**
22                                        *Attorneys for Plaintiff Julie Borja Emmanuel*

Page 31 of 31

Julia Borja Emmanuel v. Guam Seventh-Day Adventist et al.
Civil Case No. CIV03-00030
Plaintiff's Post-Trial Brief          Document 117-2      Filed 01/20/2006      Page 16 of 16